UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER UNDERWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00684-TWP-DML |
| | ) |
| MELISSA BAGIENSKI, and SHERI WILSON, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on a Motion for Summary Judgment filed by the Defendants (Dkt. 32). Plaintiff Christopher Underwood ("Mr. Underwood") alleges in this civil action that the defendants—Physician's Assistant Sheri Wilson ("PA Wilson") and Licensed Practical Nurse Melissa Bagienski ("LPN Bagienski") (collectively, "the Defendants")—violated his constitutional rights when they denied him prescription pain medication for 20-30 days. On February 14, 2022, the Defendants filed their Motion for Summary Judgment. For the reasons below, the motion is **denied**.

**I.   STANDARD OF REVIEW**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.   **FACTUAL BACKGROUND**

Because the Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Underwood is an inmate at Pendleton Correctional Facility ("Pendleton"). PA Wilson and LPN Bagienski were employed by Wexford of Indiana, LLC, to provide medical care to inmates at Pendleton. (Dkt. 34-3 at 1; Dkt. 34-4 at 1.)

Mr. Underwood has suffered from chronic back pain since at least 1997 when he had back surgery to treat a pinched nerve. (Dkt. 34-5 at 4.) For several years, he was prescribed 1,800 milligrams of Trileptal daily and was issued passes to have a bottom bunk on the ground floor with a chair. *Id*. at 5-6. Without Trileptal, his back pain is as severe as 12 on a 10-point scale and wakes him up throughout the night. *Id*. at 6. Trileptal reduces his pain level to a 7. *Id*. Before taking Trileptal, he had tried numerous other medications. *Id*.

In July 2020, LPN Bagienski was told by an unidentified member of the nursing staff that an unidentified correctional officer reported that Mr. Underwood had hoarded several prescription pills in his cell. (Dkt. 34-4 at 2.) She passed this information on to PA Wilson who discontinued Mr. Underwood's Trileptal prescription. *Id*.; Dkt. 34-3 at 2. Mr. Underwood contends that LPN Bagienski fabricated the hoarding allegation. (Dkt. 2 at 4.)

Mr. Underwood stopped receiving Trileptal on July 3, 2020. (Dkt. 34-5 at 10.) Without Trileptal, his pain returned to 12 on a 10-point scale. *Id*. at 9-10. On July 5, 2020, he submitted a healthcare request form to see a doctor for a prescription refill. *Id*. He was scheduled to see PA Wilson on July 15, 2020, but was unable to attend due to an emergency signal in the prison. *Id*.

On July 14, 2020, PA Wilson emailed LPN Bagienski to ask for the exact details of what had been found in Mr. Underwood's cell. (Dkt. 33 at 2.) On July 16, 2020, she again emailed LPN Bagienski about the alleged shakedown of Mr. Underwood's cell. She also emailed a member of custody staff that day. *Id*. There is no evidence in the record that PA Wilson received any responses to her emails.

Mr. Underwood was seen by PA Wilson on July 20, 2020, and asked to resume taking Trileptal. (Dkt. 34-5 at 10.) She denied his request because she was waiting on confirmation of

the report that he had been caught hoarding the medication.  However, she provided him with Tyleno l and told him he could purchase more on commissary.  *Id*.

On July 22, 2022, after her requests for proof of Mr. Underwood's hoarding went unanswered, she reinstated his Trileptal prescription.  (Dkt. 33 at 3.)  But Mr. Underwood did not begin receiving the medication.  (Dkt. 34-5 at 11.)  At his next chronic care visit on August 3, 2020, he told PA Wilson that he was still not receiving his medication, so she sent an email following up on his prescription and gave him a one-time shot of Toradol.  *Id*.  Sometime in August, he began to receive Trileptal again.  In total, he was without it for approximately 28-29 days.  (Dkt. 34-5 at 9.)

## III.  DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals."  *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need."  *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021).  "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'"  *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

"Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference."  *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012) (holding that the plaintiff

stated an Eighth Amendment claim because "even though this [four-day] delay [in treatment] did not exacerbate [the plaintiff's] injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition").

For the purposes of this Motion, the Court assumes that Mr. Underwood's back pain is a serious medical condition.  To survive summary judgment then, he must show that the Defendants acted with deliberate indifference—that is, that they consciously disregarded a serious risk to his health.  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

The record, viewed in the light most favorable to Mr. Underwood, shows that PA Wilson discontinued a successful pain medication based on an unverified—and ultimately untrue—report that he had hoarded it.  The record also shows that PA Wilson did not attempt to verify the report for over a week.  Mr. Underwood stopped receiving Trileptal on July 3, 2020, and PA Wilson's first email requesting details about the report was sent on July 14, 2020.

A reasonable jury could credit Mr. Underwood's contention that LPN Bagienski fabricated the hoarding allegation, particularly given that no evidence of the alleged hoarding exists in the record.  A reasonable jury could also conclude that PA Wilson's delay in investigating the hoarding allegation, her decision to not provide any alternative pain treatment at first, and her later decision to provide only 30 325mg capsules of Tylenol in place of 1,800 mg of Trileptal per day, constituted deliberate indifference to Mr. Underwood's serious back pain.  (Dkt. 34-1 at 2-4.)

Furthermore, the Defendants appear to have made no effort to identify the member of the nursing staff who allegedly reported the hoarding to LPN Bagienski or the correctional officer who allegedly told the nursing staff member about it.  Or perhaps, they tried to identify these links in the chain that led to Mr. Underwood's unnecessary pain but failed.  Either way, a reasonable juror could conclude from the record that the Defendants' failure to confirm a report that had been passed

among at least four people, two of whom are unknown, before removing Mr. Underwood from the most effective pain treatment he had found constituted deliberate indifference.

Because disputes of material fact remain, the Defendants are not entitled to summary judgment.

### IV.  CONCLUSION

For the reasons discussed above, the Defendants' Motion for Summary Judgment, Dkt. [32], is **DENIED.**

Because it is the Court's preference that Mr. Underwood be represented by counsel for trial or any potential settlement conference, if he so desires, the Court will attempt to recruit counsel to represent him.  Mr. Underwood shall have **through Friday, September 9, 2022,** by which to file a motion for recruitment of counsel or object to the recruitment of counsel on his behalf.  If Mr. Underwood does not respond, the Court will infer that he wishes to proceed in this case *pro se*. **The Clerk is directed** to include the motion for counsel form with Mr. Underwood's copy of this Order.

If recruited counsel has appears for Mr. Underwood, **the Magistrate Judge is requested** to set a status conference to discuss what further development is needed before trial and to schedule a settlement conference. Even if Mr. Underwood elects to proceed *pro se*, a settlement conference will be scheduled.

**SO ORDERED.**

Date:  8/15/2022

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher Underwood, #863907
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
STOLL KEENON OGDEN PLLC
doug.bitner@skofirm.com


Rachel D. Johnson
STOLL KEENON OGDEN PLLC
rachel.johnson@skofirm.com


Magistrate Judge Debra McVicker Lynch